**UDALL LAW FIRM, LLP**
ATTORNEYS AT LAW
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353
jchandler@udalllaw.com

Jeanna M. W. Chandler, SBN 22384, PCC #65674
*Attorney for Elizabeth Matthews and Sassan Momtazbakhsh*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ANDREW FERNANDO CARRANZA, | Case Number: 4:24-bk-00562-BMW<br><br>Adv. No. _____ |
| ELIZABETH MATTHEWS and SASSAN MOMTAZBAKHSH, a married couple,<br><br>Plaintiffs,<br><br>vs.<br><br>ANDREW FERNANDO CARRANZA,<br><br>Defendant. | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523**<br><br>*Assigned to:* The Hon. Judge Brenda Moody Whinery |

Plaintiffs Elizabeth Matthews and Sassan Momtazbakhsh ("Plaintiffs"), by and through their counsel undersigned, for their Complaint to Determine Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523, hereby allege as follows:

1. This is an adversary proceeding filed pursuant to 11 U.S.C. § 523 to determine the non-dischargeability of a debt. This proceeding is commenced pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction to hear this adversary proceeding as a core proceeding under 28 U.S.C. § 157(b)(2) and § 1334(a-b).

3. On or about January 5, 2024, the Debtor filed his Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Arizona, initiating this Chapter 13 case.

4. This judicial district is the proper venue for this adversary proceeding as the proceeding arises in connection with the bankruptcy case which is currently pending before this Court in this judicial district.

5. Upon information and belief, the Debtor at all times relevant has been residing in the State of Arizona.

6. Plaintiffs are creditors holding a non-dischargeable claim in this bankruptcy case by virtue of their monetary losses caused directly by the Debtor's fraudulently concealing their impending bankruptcy while accepting Plaintiff's money, as more fully alleged herein.

## FACTUAL ALLEGATIONS
### (First Home)

7. On May 2, 2022, Plaintiffs entered into a contract with Settlers West for the construction of a custom home on 5199 North 1st Avenue, Tucson, in exchange for the payment of $1,039,500.00. A true and correct copy of the Construction Contract is attached hereto as **Exhibit A**.

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

UDALL LAW FIRM, LLP
4801 E. BROADWAY BLVD., SUITE 400
TUCSON, ARIZONA 85711-3638
(520) 623-4353

8. On the same date, Plaintiffs paid Settlers West an initial deposit of $82,900.00 toward the project.

9. Plaintiffs paid Settlers West a second deposit of $72,424.00 on June 15, 2022.

10. For the remainder of the balance, Plaintiffs secured a loan from the National Bank of Arizona ("NBA"), in the amount of $999,500.00 to fund this construction project.

11. Of the loan amount, only $877,000 was intended for the project, and the remaining $122,500 were contingency funds in the event that upgrades or additions were made.

12. Upon information and belief, Settlers West received a quote for the initial excavation work from a contractor, David Evans with Green Hill Development, for $27,000.00.

13. However, instead of employing Mr. Evans at that price, Settlers West charged Plaintiffs approximately $110,000.00 for the excavation work.

14. Over time, Plaintiffs began to notice that a number of significant delays had prolonged the projects.

15. Plaintiffs received numerous excuses from Settlers West throughout the duration of the project to attempt to explain the delays.

16. Further, Settlers West charged Plaintiffs for upgrades to the home that were over and above the contract price.

17. Settlers West promised Plaintiffs large discounts on these upgrades if they agreed to pay in cash.

18. Even though Plaintiffs advanced multiple cash payments for upgrades to Settlers West, the upgrades remain either uncompleted or not started at all.

19. Settlers West also invoiced Plaintiffs for completing the driveway and septic system, and it separately invoiced NBA approximately $12,000 and $8,000, respectively, for those same items.

20. Upon information and belief, Settlers West never initiated a permit application for the home's utilities.

21. On May 3, 2023, Plaintiffs paid Settlers West $7,725.00 for the installation of a fire sprinkler system in the home.

22. Plaintiffs have learned that Settlers West has not paid Allan Fire Protection Systems, the subcontractor who installed the fire sprinkler system, despite being invoiced $6,400.00 for these services on May 17, 2023,

23. Moreover, Plaintiffs have discovered that the cost breakdown that Settlers West submitted to NBA was different from the completed plans they agreed upon.

24. Plaintiffs signed off on the cost breakdown documents with NBA, because they relied on Settlers West to submit the same breakdown to NBA that the parties had agreed upon.

25. Once Plaintiffs realized the discrepancy between the cost breakdown given to NBA and what had been approved by them, they contacted NBA.

26. NBA told Plaintiffs to resolve the issue with Settlers West.

27. When Plaintiffs contacted Andrew about the discrepancy, he told Plaintiffs that he was "looking into it" and did not provide updates for several months.

28. NBA continued to disperse funds to Settlers West, despite the fact that work had not been completed on the prior draws.

29. Ultimately, Andrew represented to Plaintiffs via text message that he spoke with NBA and moved some numbers around, which would permit him to add the upgrades into future draws.

30. Plaintiffs received this text message from Andrew just a few days before they received notice of the alleged dissolution of Settlers West.

31. NBA dispersed funds to Settlers West for having completed the trenching, despite the trenching work not having commenced.

32. As a result, over $850,000.00 of the loan funds for the project have been paid out to Settlers West, despite very little work being completed.

33. Additionally, Plaintiffs have paid Settlers West approximately $60,000.00 in the form of cash, checks, and credit cards for extra upgrades in the first home that were never completed.

34. Presently, the construction of the home is in the drywall stage, with very little work completed.

**FACTUAL ALLEGATIONS**
**(Second Home)**

35. In July of 2022, Plaintiffs entered into a second contract with Settlers West for a custom guest house, located on the same street as the first house, for the purchase price of $304,300.00. A true and correct copy of the Construction Contract is attached hereto as **Exhibit B**.

36. Settlers West offered Plaintiffs a $43,000 discount on the second home if they agreed not to take out a loan for the home, and to pay Settlers West half of the contract amount upfront, in cash.

37. Settlers West rushed Plaintiffs into accepting the offer by indicating that it would only be available for a few days.

38. On July 7, 2022, Plaintiffs paid Settlers West the initial down payment for the guest house of $152,150.00.

39. As a result of Settlers West's promises of a discount, Plaintiffs opted not to take out a loan for this second contract and instead paid Settlers West from their own funds.

40. Over the next few months, the project experienced significant permitting delays.

41. During this time, Settlers West did not take any action to expedite the process, despite the fact that they were holding a large amount of money for the project.

42. Plaintiffs received numerous excuses from Settlers West throughout the duration of the project to attempt to explain the delays.

43. Plaintiffs discovered that the permitting process was delayed because Settlers West was not responding to the city's requests for further information.

44. After months of permitting delays in which the project had not commenced, Plaintiffs requested that Settlers West return their deposit.

45. Settlers West told Plaintiffs that it was not as simple as returning the money, and that they would lose some of their deposit.

46. Instead, Settlers West agreed to put the money in trust for Plaintiffs, which, to Plaintiff's understanding, never occurred.

47. Moreover, Plaintiffs began to realize that Settlers West was requesting that Plaintiffs advance funds for the project, even though work had not been fully completed for the prior payments.

48. Specifically, Plaintiffs paid Settlers West the second ($60,860.00) and third ($44,145.00) draws towards for guest home contract on September 5, 2023, and October 12, 2023, respectively.

49. After these payments, the remaining balance on the guest home contract is $38,795.00.

50. However, the majority of the work to be completed by Settlers West under both contracts remains unfinished.

51. Moreover, a $12,000.00 lien has been placed on Plaintiff's second home by an electrician that was not paid by Settlers West.

52. Upon information and belief, at the time the construction contracts were executed by the parties and the last two payments were accepted from Plaintiffs, Defendants were insolvent or nearing insolvency and unable to pay their debts as they became due.

53. Upon information and belief, Andrew and Settlers West used funds for the benefit of its members, managers, officers, and/or directors (and/or other business ventures).

54. Moreover, upon information and belief, at all times relevant hereto, Andrew was the alter-ego of Settlers West, and for all intents and purposes are one in the same. At all

relevant times there existed a unity of interest, ownership, and control between these parties such that any separateness between them has ceased to exist, if it in fact ever existed.

55. Upon information and belief, based on estimates provided by a different contractor, it will cost Plaintiffs approximately $400,000.00 to complete both homes.

56. Plaintiffs have been damaged in an amount to be determined at trial but no less than $1,343,800.00.

## COUNT ONE
## (U.S.C. § 523(a)(2)(A) CLAIMS)

57. Plaintiffs incorporate herein by this reference all allegations set forth above as though fully set forth herein.

58. Under 11 U.S.C. § 523(a)(2)(A), a debtor is not entitled to be discharged from any debt to the extent that the debt was obtained by: false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition.

59. The Debtor represented to Plaintiffs that it would fully construct two homes, and that it would provide Plaintiff with discounts on certain upgrades for paying in cash.

60. There can be no doubt that the Debtor knew these representations were false, and that, at the time Debtor accepted Plaintiff's money it intended to use, and did actually use, the money for other projects and/or for personal reasons.

61. The Debtor made the false representations intending to deceive Plaintiffs into advancing him money for the construction of the homes.

62. Plaintiffs did rely on the Debtor's representations in that they made multiple cash payments to Debtor.

63. Plaintiffs have been damaged in an amount to be determined at trial but no less than $1,343,800.00.

WHEREFORE, Plaintiffs demand the following relief from Defendant:

a. For judgment that the indebtedness due and owing to Plaintiffs should be determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A),

b. For such other and further relief as may be proper and just under the circumstances.

DATED this ___ day of February 2024.

UDALL LAW FIRM, LLP


By:*/s/ Jeanna M. W. Chandler*
    Jeanna M. W. Chandler
    *Attorney for Elizabeth Matthews and Sassan Momtazbakhsh*